## AFFIDAVIT OF SPECIAL AGENT DONALD A. LENZIE

I, Special Agent Donald A. Lenzie, depose and state as
follows:

1.    I am a Senior Special Agent with Immigration and
Customs Enforcement (ICE) and have been so employed by ICE and,
before that, the US Customs Service for over twenty-four years.
I am also cross designated as a Drug Enforcement Agent ("DEA")
and have in the past been assigned to various DEA narcotics
investigative groups. I am currently assigned to the Manchester,
NH ICE field office.

2.    During my career, I have conducted and participated in
hundreds of investigations involving narcotics trafficking and
related money laundering schemes. In particular, I have worked on
numerous investigations involving the illegal importation and
trafficking of marijuana.

3.    I submit this affidavit in support of a Criminal
Complaint charging **JAVIER NAVARRO, ("NAVARRO"), RENIEL SILVA-
LAZCANO ("SILVA"), and DAVID PACHECO-GRAGEDA ("PACHECO")**, and
**PABLO B. RODRIGUEZ ("RODRIGUEZ")** with conspiracy to possess with
intent to distribute and to distribute marijuana, a Schedule I
controlled substance, in violation of 21 U.S.C. §§846, and 841
(a)(1).

2

4.     This affidavit includes a summary of events that I am personally familiar with as well as the observations and knowledge related to me by other U.S. Customs/ICE agents based in Boston, MA and Tucson, AZ, DEA agents, Massachusetts State Police Troopers, and other law enforcement personnel that have been working on this investigation.

**Chelsea marijuana seizure: February 12, 2001**

5.     Since early winter 2001, law enforcement in Massachusetts, Arizona and elsewhere have investigated a significant marijuana smuggling and distribution organization involved in transporting marijuana (as well as the illegal cash proceeds from such marijuana sales) between Arizona and destinations in and around Boston, Massachusetts.

6.     During the morning of February 12, 2001, agents from U.S. Customs, DEA, Massachusetts State Police and other law enforcement officers conducted a surveillance of the residence of John Schrimpf ("Schrimpf") at 55-57 Linwood Road, Lynn, MA. During this surveillance, agents observed Schrimpf leave the Linwood Road residence, enter a Ford Probe sedan, and drive off. Agents followed Schrimpf to a U-Haul truck rental facility located in nearby Saugus, Massachusetts.  After a period of time, Schrimpf was observed departing the U-Haul facility driving a rented U-Haul truck.  Schrimpf and the U-Haul were then followed

3

from the rental facility back to Schrimpf's residence where
Schrimpf parked the truck on the street and re-entered 55-57
Linwood Road.

7.    A short time after Schrimpf's arrival, two Hispanic
males, later identified as SILVA and PACHECO, arrived at the
Linwood Road residence and were observed exiting the
aforementioned Ford Probe sedan that was being driven by a tall,
thin white male, later identified as Schrimpf's roommate, Jason
Mannix ("Mannix").

8.    Surveillance continued at 55-57 Linwood Road for an
additional period of time until agents, later, observed SILVA and
PACHECO leave Schrimpf's residence with Mannix, enter the Ford
Probe together, and drive away.  After that, at 4:25 P.M.,
Schrimpf was seen exiting the Linwood Road residence, re-entering
the U-Haul and also driving away.  Surveillance units followed
the U-Haul, containing Schrimpf, from Linwood Road in Saugus, MA
directly to the New England Produce Market located in Chelsea,
MA.  A short time later, Schrimpf, Manuel Barraza ("Barraza"),
and Rodolfo Garcia-Cisneros ("Garcia") were arrested by law
enforcement while in the process of offloading multiple boxes of
marijuana from Barraza's tractor trailer into Schrimpf's U-Haul.[1]

---

[1]    Twenty-five boxes containing suspected marijuana that were seized from both trucks
on February 12, 2001 were later chemically tested by the Massachusetts State Police Crime

4

## Schrimpf's post-arrest statements

9.    After being placed under arrest and apprised of his
Miranda rights, Schrimpf stated that he understood his rights and
would answer questions.[2]  Schrimpf related that he came to the
Chelsea Produce Market that afternoon to pick up several hundred
pounds of marijuana from the driver of the 18 wheeler, Barraza.
Schrimpf also admitted to me that six or seven weeks earlier, in
December 2000, he had picked up a previous marijuana shipment
from Barraza from the same general location in Chelsea.
According to Schrimpf, the previous shipment involved almost 230
pounds of marijuana.  Schrimpf also related that sometime after
the December 2000 marijuana delivery, but before February 12,
2001, Schrimpf gave Barraza approximately $130,000 in U.S.
currency as partial payment for the December 2000 230 pound
shipment of marijuana.

---

Laboratory. The gross weight of all the marijuana that was seized amounted to 559 pounds.  A
representative sample was chemically tested and proved positive for marijuana.

[2] Schrimpf has since plead guilty to an indictment charging him with marijuana
conspiracy and possession with intent to distribute marijuana in connection with this case.
Schrimpf has since been sentenced to 36 months imprisonment. Schrimpf signed a plea
agreement with the government and has agreed to cooperate with the government in return for
the hope of a reduction of his 36 month sentence.  Schrimpf's criminal record involves
misdemeanor convictions for operating a motor vehicle after license suspension (twice), leaving
the scene of an accident after causing property damage, and possession of marijuana; and a
felony conviction for armed robbery and accessory after the fact for which he received a 3 to 5
year suspended sentence.

5

**Javier NAVARRO: Mexican marijuana supplier**

10.   In subsequent interviews with Schrimpf, he told me
that he had negotiated the purchase of the December 2000 shipment
(230 pounds of marijuana), the current February 12, 2001 load,
and a third marijuana load back in September 2000, with a Mexican
national whom he identified as Javier NAVARRO.  In the course of
negotiating these three (3) different marijuana transactions,
Schrimpf flew to Tucson, AZ in *both* September and December 2000
to meet personally with NAVARRO.   Upon Schrimpf's arrival in
Arizona, he was met by an associate of NAVARRO's who identified
himself to Schrimpf only as "Ivan."  Ivan took Schrimpf across
the border into Mexico where, on each occasion, Schrimpf and
NAVARRO met in person to discuss the purchase and sale of
marijuana.

**December 2000 load: $190,000 owed NAVARRO**

11.   Prior to receipt of the 230 pound marijuana shipment in
December 2000, Schrimpf negotiated with NAVARRO to pay $190,000
for that load.  Specifically, NAVARRO directed Schrimpf to give
Barraza $130,000 (of the $190,000) when Schrimpf met Barraza in
Massachusetts in December 2000 and took delivery of the
marijuana, leaving a balance of $60,000.  Later, NAVARRO called
Schrimpf to say that he (NAVARRO) wanted the remaining $60,000
that Schrimpf owed him for the December 2000 load.  This time

6

Schrimpf gave Mannix $20,000 in cash and sent him to Arizona in January 2001 with instructions to deliver the money to NAVARRO. According to Mannix, when Mannix arrived in Arizona he was met by both SILVA and PACHECO at the Phoenix, AZ airport and gave them the $20,000 that Schrimpf had entrusted to him.

12.   Shortly before February 12, 2001, NAVARRO contacted Schrimpf again.  This time NAVARRO told Schrimpf that he was sending SILVA and PACHECO to Boston to meet with Schrimpf and to collect the balance of the aforementioned $190,000 - or $40,000. When SILVA and PACHECO arrived at Schrimpf's apartment on February 12, 2001, Schrimpf handed SILVA the outstanding $40,000 that he owed NAVARRO for the December 2000 marijuana load, plus an additional $20,000 down payment for the marijuana that Schrimpf expected to receive from Barraza later that day in Chelsea, MA.

**SILVA and PACHECO: $60,000 from Schrimpf**

13.   In order to pay SILVA and PACHECO the $60,000 that he owed NAVARRO, Schrimpf had Mannix to pick up SILVA and PACHECO from their local hotel and bring them to his Linwood Road apartment on February 12, 2001.   After SILVA and PACHECO arrived, Schrimpf handed the $60,000 to SILVA while PACHECO, who was seated next to SILVA, looked on.   Schrimpf and SILVA spoke to each other in English and discussed the fact SILVA and PACHECO

7

were to bring the $60,000 back to NAVARRO to pay (in part) for
the two most recent shipments of marijuana that Schrimpf had
purchased from NAVARRO - the one in December 2000 and the one
that was arriving that day, February 12, 2001.  According to
Schrimpf, PACHECO listened to the conversation but did not say
anything.

**Hampton Inn: Seizure of $50,000 from SILVA and PACHECO**

14.  Schrimpf explained further that after he delivered the
$60,000 to SILVA, he directed his roommate (Mannix) to drive
SILVA and PACHECO to T. F. Green Airport in Providence, RI, so
that they could catch their scheduled return flight back to
Phoenix, Arizona.[3]  Agents subsequently learned that SILVA and
PACHECO had missed their flight to Phoenix, AZ on the night of

---

[3] Following the arrest of Schrimpf, Barraza, and Garcia-Cisneros, agents interviewed
Mannix about the events of February 12, 2001.  Mannix confirmed what Schrimpf had related to
agents; that he was asked by Schrimpf to pick up SILVA and PACHECO at a local hotel, bring
them to Schrimpf's Linwood Road apartment, and, later, drive them to the Providence, RI airport
so that they could catch a flight to Arizona.

Mannix also confirmed that several weeks earlier, he had flown to Arizona, alone, with
$20,000 that Schrimpf had given to him with instructions to deliver same to NAVARRO or his
associates.  On arrival in Arizona, Mannix stated that he was met at the airport by SILVA and
PACHECO, and that, shortly after that, Mannix handed them the $20,000 in cash that Schrimpf
had entrusted him to bring to Arizona.  Mannix further confirmed that the two Hispanic men that
he drove to the Providence, RI airport on February 12, 2001, were the *same* men that he met with
in Arizona several weeks earlier and to whom he hand-delivered Schrimpf's $20,000.  The
government obtained this information from Mannix pursuant to the protections of a proffer letter
that was provided to Mannix by the U.S. Attorney's Office.  In September 1998 Mannix
admitted to sufficient facts in connection with criminal charges involving attempted car theft and
possession of burglarious tools.  The matters were continued without a finding (CWOF) by the
court for twelve months and, later, dismissed.

8

February 12, 2001, and, instead, had checked into the Hampton Inn located at 2100 Post Road in Warwick, RI.

15.  At approximately 9:30 PM on February 12, 2001, Rhode Island based agents confronted SILVA and PACHECO in Room 331 of the Hampton Inn.  Agents identified themselves as law enforcement, then asked both SILVA and PACHECO if they would answer some questions and permit a search of their belongings and their hotel room. Both SILVA and PACHECO agreed to answer questions and both men gave oral consent to agents to search their hotel room. (DEA SA Russell Harrington also related to me that *both* SILVA and PACHECO conversed with him and other agents present in the hotel room in English, and did not have difficulty understanding or responding to the agents' questions.)

16.  A search of SILVA's and PACHECO'S hotel room resulted in the discovery of eight (8) bundles of U.S. currency totaling $50,000 and wrapped in black contact paper.  The money was discovered behind the bottom drawer and along the back of the entertainment center.[4]

17.  During questioning of both men in the hotel room, SILVA and PACHECO (speaking in English) each denied any knowledge

---

[4] According to TFA Cauley, the wrapping surrounding the $50,000 found in SILVA's and PACHECO's hotel room was identical to other wrapped U.S. currency discovered by agents inside Schrimpf's Linwood Road apartment following his arrest earlier in the day.

of the $50,000 that agents found hidden behind the entertainment center.  Later that night, and after being apprized of their Miranda warnings (this time in Spanish), and executing written Miranda forms, SILVA and PACHECO gave formal statements that were reduced to writing and, then, initialed and executed by both SILVA and PACHECO.  In their statements, SILVA and PACHECO both stated that they did not know how the funds got into their hotel room, nor did they have any ownership interest in the money. SILVA further stated that he had come to Boston to visit friends while, curiously, PACHECO remarked that he had flown to Rhode Island the previous Friday to see Boston.  They both related that having missed their flight earlier in the evening, they would be returning to Phoenix, AZ the next day.  Based upon the information related to agents by SILVA and PACHECO, the $50,000 was seized by agents and SILVA and PACHECO were told that they could return to Arizona.[5]

**Barraza's post-arrest statements: Tucson, AZ**

18.    Following his arrest, Barraza was also read his

---

[5] After February 12, 2001, administrative forfeiture of the $50,000 in U.S. currency that was seized from SILVA and PACHECO's hotel room was initiated by the Essex County District Attorney's Office ("ECDAO").  ECDAO notified SILVA and PACHECO by mail of the Commonwealth' intention to forfeit the funds, and that if either individual intended to challenge or object to forfeiture, written notice needed to be submitted to ECDAO within a specified time period.  To date, neither SILVA nor PACHECO has filed a challenge to the Commonwealth's forfeiture of these funds.  The Commonwealth has already obtained a final order of forfeiture for the aforementioned $50,000.

10

<u>Miranda</u> rights and after indicating that he understood those

rights agreed to answer questions.  On subsequent days, Barraza

was interviewed further by myself and other agents relative to

his involvement with this marijuana operation.[6]  Barraza related

that he owned the 18-wheeler from which the marijuana boxes were

transferred.  Barraza further related that on Friday, February 9,

2001, he had picked up the cardboard boxes containing marijuana

at a warehouse in Tucson, AZ.  Barraza also provided me with a

description of the warehouse and the neighborhood within Tucson

that the warehouse was likely located.

**5290 N. Casa Grande Highway, Unit #117**

19.  Later, I related Barraza's information about the Tucson

warehouse to Customs Special Agent John Lacinski ("Lacinski").

Lacinski, who is assigned to the Customs' Office in Tucson,

provided me with photographs of a warehouse complex in Tucson, AZ

that was located at 5290 N. Casa Grande Highway, Unit #117, and

which matched the description given to me by Barraza.

20.  On March 19, 2001, I showed Barraza the photographs of

---

[6] Barraza has also cooperated with the government in the hope of receiving a reduction
in his sentence.  Like Schrimpf, Barraza has pleaded guilty to an Indictment in U.S. District
Court charging him with conspiracy to distribute marijuana and possession with intent to
distribute marijuana.  Barraza has been sentenced in this matter.  At the time, Barraza received a
U.S.S.G. §5K1.1 cooperation letter for information that lead to the seizure of marijuana at 5290
N. Casa Grande Highway, Unit #117 in Tucson, AZ.  As a result, the Court sentenced Barraza to
a three year period of probation. Barraza does not have any other criminal convictions.

11

the aforementioned warehouse and he identified the facility

depicted in these photographs as the precise location where the

25 boxes of marijuana that myself and other agents later seized

in Chelsea, MA on February 12, 2001 had been loaded onto his

truck.  Barraza also stated that a previous shipment of boxed

marijuana that he delivered to Schrimpf in either December 2000

or January 2001 at the Chelsea Produce Center, was picked up from

the same Tucson, AZ warehouse that Barraza identified in the

photographs.

21.    Barraza also stated that on the occasions that he went

to the warehouse at 5290 N. Casa Grande Highway, Unit #117 to

collect marijuana, he was met by several Hispanic males.  Barraza

further related that one of the Hispanic men -- identified later

by Barraza as RODRIGUEZ — greeted him at the front door of the

warehouse.  Using his own keys, RODRIGUEZ unlocked the front door

to Unit #117.  Thereafter, RODRIGUEZ and the other Hispanic men

assisted Barraza in loading boxed marijuana into the trailer of

Barraza's truck.

**5290 N. Casa Grande Highway, Unit #117 and RODRIGUEZ**

22.    On April 4, 2001, Lacinski reviewed property management

records for the Tucson warehouse at 5290 N. Casa Grande Highway

and Unit #117.  He learned the following information:

a) 5290 N. Casa Grande Highway, Unit #117 is

12

occupied by *Realistic Imaging*;

b) rental payments for 5290 N. Casa Grande, Unit #117 during the period between September 1999 and April 2001, were paid (*in person*) by "PABLO B. RODRIGUEZ"; and

c) all rental payments for 5290 N. Casa Grande Highway, Unit #117, were made by PABLO B. RODRIGUEZ using cash.

**Search of 5290 N. Casa Grande Highway, Unit #117**

23.    On April 9, 2001, Lacinski obtained a federal search warrant for 5290 N. Casa Grande, unit #117, in Tucson, AZ.  At approximately 2:15 PM, the search warrant was executed at this location.  A search of the premises produced approximately 601 pounds of marijuana, as well as scales, cellophane wrapping, packaging tape, duffel bags, and tightly sealed fifty-gallon barrels.  In fact, marijuana bales and wrapping materials were found inside each room of Unit #117.[7]

**White Chevy Blazer and 513 Columbia Street**

24.    At approximately 1:43 P.M. the same day -- almost thirty minutes *before* agents executed the search of 5290 N. Casa

---

[7] Moments before entering the warehouse at 2:15 P.M., agents stopped and detained two Hispanic males just as they exited Unit #117 but before they could drive away.  After the search of the warehouse and discovery of the aforementioned items, these men — Hector Amavisca and Nestor Fontes — were arrested by U. S. Customs agents.  Amavisca and Fontes were later charged in federal court in Tucson, AZ with conspiracy to possess with intent to distribute marijuana, and possession with intent to distribute marijuana; United States v. Amavisca et al., Criminal Docket No. CR 01-636-TUC.  Amavisca and Fontes have since pled guilty to the federal indictments and are currently incarcerated.

13

Grande Highway, Unit #117 — U.S. Customs/ICE Special Agents
Jolanta Armstrong ("Armstrong"), Steve Ruble ("Ruble"), and Gayle
Jennings ("Jennings") established surveillance of the back door
of Unit #117.  Agents Armstrong and Ruble were together in one
vehicle parked approximately 15 yards from the back door of Unit
#117 and with an unobstructed view of that location.  At that
time, Armstrong and Ruble observed two (2) Hispanic males exit
the back door of Unit #117 and walk to a white Chevrolet Blazer
(Reg. #741-FFW) parked adjacent to the back door of Unit #117.
One of the men entered the passenger side of the vehicle, while
the stockier of the two men entered the driver's side of the
vehicle.  Seconds later, the white Blazer drove off but was not
stopped by agents.[8]

    25.   Following the search of Unit #117 at 5290 N. Casa
Grande Highway on April 9, 2001, Customs agents proceeded to 513
W. Colombia Street in Tucson, and spoke with individuals at that
address.  Agents were introduced to Adalberto Gamez, the
registered owner of the Blazer.  In response to agents' questions
about the white Chevrolet Blazer, Mr. Gamez stated that he did
not own a white Chevrolet Blazer.

    26.   During agents' interview of Gamez, agents also met and

----

[8] Arizona Department of Motor Vehicle records indicated that Arizona license
#741FFW was registered to Adalberto Gamez of 513 Columbia St., Tucson, Arizona.

14

spoke with an Hispanic female who also resided at 513 W. Colombia

Street -- Rita Lopez ("Lopez").  Lopez identified herself to the

agents as the common law wife of Pablo RODRIGUEZ, and stated that

she had seen her husband, RODRIGUEZ, driving around in the white

Chevrolet Blazer earlier in the day.  In addition, as agents were

leaving the Gamez residence, a teenage male youth who was playing

outside the residence approached the agents and told them that

his father, Pablo RODRIGUEZ, often drove a white Chevrolet

Blazer.

27.    Several weeks later, on April 27, 2001, Lacinski

presented Armstrong with a single color photograph of an Hispanic

male and asked Armstrong if she recognized the person depicted in

that photograph.  After examining this photograph - an Arizona

RMV driver's license photo of RODRIGUEZ -- Armstrong stated that

the male depicted was the same Hispanic gentleman that she

observed exit Unit #117 on the afternoon of April 9, 2001, enter

the driver's side of the white Chevrolet Blazer and drive away.

**Barraza identification of RODRIGUEZ**

28.    The day before, on April 26, 2001, in Boston,

Massachusetts, I showed Barraza approximately eight (8)

photographs of different Hispanic males -- photographs that

included the aforementioned Arizona RMV driver's license

photograph of RODRIGUEZ.  Without naming or, otherwise,

15

identifying any of the persons depicted in these photographs, I asked Barraza if he recognized any of the people.  When Barraza came to the driver's Arizona driver's license photograph of RODRIGUEZ, he identified that individual as the *same* man that had assisted him load his truck at the Tucson warehouse on February 12, 2001, as well as on two other occasions dating back to September 2000.[9]  On those occasions, Barraza stated that this individual, RODRIGUEZ, was the person that unlocked and opened the door to Unit #117 before accompanying Barraza inside. Barraza further related that on these trips to the warehouse, RODRIGUEZ (and other men) assisted Barraza load multiple cardboard boxes containing marijuana from the warehouse and into the trailer of his truck.  After picking up marijuana from RODRIGUEZ and the others on these occasions, Barraza drove across the country in order to deliver the drugs to Schrimpf in Chelsea, MA.

---

[9] On June 28, 2001, SA Lacinski presented Barraza three photographic arrays consisting of six (6) Hispanic males in each array.  Barraza was asked if there was anyone depicted in these arrays that he recognized.  Barraza immediately pointed to a photograph of RODRIGUEZ and stated that he was sure that the person depicted (RODRIGUEZ) was the individual that met him at the Tucson warehouse on several previous occasions when he collected boxed marijuana. Barraza also stated that he thought RODRIGUEZ was the owner of the warehouse because he was the person who possessed the keys that unlocked the warehouse doors.  During the same interview, Barraza identified a second Hispanic male from one of the three photo arrays as *another* individual from the Tucson warehouse (in addition to RODRIGUEZ) that helped him load boxed marijuana into his truck.

16

## Conclusion

29.  Based on the information contained in this Affidavit,
all of which is true and accurate to the best of my knowledge,
information and belief, I submit that there is probable cause to
believe that **JAVIER NAVARRO ("NAVARRO"), RENIEL SILVA-LAZCANO**
**("SILVA"), DAVID PACHECO-GRAGGEDA ("PACHECO"),** and **PABLO B.**
**RODRIGUEZ ("RODRIGUEZ")**  knowingly conspired to possess with
intent to distribute and to distribute marijuana, a Schedule I
controlled substance, in violation of 21 U.S.C. §§846 and
841(a)(1).

**DONALD A. LENZIE**
Special Agent, Immigration and
Customs Enforcement


      Sworn to me and subscribed in my presence this
_____ day of March, 2004.


**JUDITH G. DEIN**
UNITED STATES MAGISTRATE JUDGE